IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action |
| | ) | No. 04-03024-01-CR-S-RED |
| RANDY J. REED, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence seized as a result of a search of his residence on February 19, 2004, should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on January 24, 2006. The defendant was present with counsel, Jeffrey Merrill, and the United States was represented by Richard Monroe, Assistant United States Attorney.

The government first called Larry D. Shepherd, a former Wright County Deputy Sheriff. He was the affiant on the search warrant in this case. In regard to defendant's contention that the officer provided the wrong address for his residence, Officer Shepherd testified that he set out detailed directions on how to get to defendant's residence. He provided an address for the residence, which he obtained from the County Assessor's office by calling them. He was given the address of 2380 County Road Stony Point Drive, Mountain Grove, Missouri. Another officer, Adam Stigall, was present when he made the telephone call and typed the information. Officer Shepherd testified that an informant did tell him that a milk barn on defendant's property was being used as a bunk house.

1

Defendant contends that Officer Shepherd falsely stated that he had been convicted of seven felonies. It was the officer's testimony that he got the information about defendant's criminal history from MULES, a computer records system. Regarding the allegation that the officer contradicted himself about a 911 call, Officer Shepherd testified that he did go on a call to the house next door to the Reeds, and that there was not a contradiction in his report.

On cross examination, the officer admitted that his report indicated that he verified the address through 911 office records, but he stated that this information was on a form, and he may have just left it. Regarding a warranty deed he got from the County Recorder's Office, he acknowledged that the deed does not indicate that Randy Reed had any ownership interest in the property. In terms of the information he included in the affidavit that there was a methamphetamine lab on the premises, he stated that only lab trash was found. The officers did not seize any of it or report it on the property log, but they did take photographs. Regarding the report that he would find people in the bunk house, he admitted that he did not conduct any follow-up investigation on this, and he did not find anyone there. The officer acknowledged that he stated in his affidavit that he talked to confidential informants who said defendant was getting pills from Oklahoma to make methamphetamine. Although he did no personal investigation, the informant had provided accurate information for about 30 other search warrants. He believed it was a different informant who told him about eight people living in the milk barn. Officer Shepherd testified that he believed he could identify controlled substances on the videotape because of his training and experience. He stated that he saw a white powdery substance in a fairly large Ziploc bag, and thought it was a controlled substance. He was not able, however, to confirm this. Regarding what he did to follow up on the information that there was a methamphetamine lab on the property, he conducted surveillance one

2

night, at about 2:00-3:00 a.m., and the music was so loud it could be heard 200 yards from the house. He did not see a methamphetamine lab during his surveillance. Regarding the information in the affidavit that defendant had stated he would not go back to prison, and that there were firearms inside the residence, he did not follow up on that allegation. He did not see any signs of firearms or a methamphetamine lab when he was staking out the premises on the night he conducted surveillance. On the videotape, he identified the persons who were on it, and did not recall that defendant was one of those persons. He did not confirm that defendant was residing at Gina Reed, his ex-wife's home, before he prepared the affidavit.

Upon questioning by defense counsel, the witness admitted that he is currently a defendant in a criminal case, charged with stealing. He was fired from the Wright County Sheriff's Department. He resigned from the Hartville Police Department, but did not recall if he had a choice. He has also been sued in civil court, for injuring a defendant. Both of the cases are ongoing.

On redirect examination, Officer Shepherd testified that he has denied the allegations in the pending lawsuits. He stated that, attached to his report, were photographs of the lab trash, which were taken by Adam Stigall. The photographs, taken inside the house, showed paraphernalia and residue, and also showed a surveillance system. In his affidavit, he referred to numerous arrest warrants for defendant and his step-daughter, Andrea Shannon. At the time he executed the search warrant, he believed they would be present because of information from reliable confidential informants, and the fact that Ms. Shannon was depicted in the video.

On recross examination, the witness admitted he did not know when the videotape was made, and acknowledged that he relied on it in support of his contention that there were controlled substances on the premises.

3

The next witness for the government was Adam Stigall, who is currently a security guard in Louisiana. In 2004, he was a Deputy Sheriff in Wright County. He was present when Larry Shepherd prepared the application for the search warrant in this case, and was present when he called the assessor's office to get the defendant's address. Mr. Stigall observed that Mr. Shepherd got an answer and typed it into the computer. Before that, he had accompanied Officer Shepherd to the Coons residence, which is right next door to the Reed residence. In the execution of the search warrant in the instant case, Mr. Stigall took the photographs.

On cross examination, the officer stated that he was not aware that Officer Shepherd stated in the affidavit that he got the address from calling 911. This would be incorrect.

Defendant called James Freeman to testify on his behalf. Mr. Freeman is shift supervisor for the night shift at the Mountain Grove Police Department. He has been there for about sixteen years. He has investigated Larry Shepherd for stealing and improper handling of evidence, at the request of Tommy Gaddis, the former police chief. His investigation resulted in misdemeanor and felony charges being brought, although the felony charges have not been pursued. Mr. Freeman has known Larry Shepherd for about ten years, working with him for about two and a half years. It is his opinion that Mr. Shepherd had a reputation for untruthfulness in the police community. This opinion was mainly derived from his investigation.

Ms. Gina Reed also testified for defendant, her ex-husband. Her address is 2200 Stony Point Drive, and it has never been 2380. She owns the property, and defendant has never been an owner of the property. Two of her daughters currently live with her. Defendant lived there years ago, but stopped residing there in 1990 or '91. Since that time, he has continued to stop by to visit with his daughters. On the morning in question, she recalled that defendant was there, but he was not living

4

there. He had spent the evening, to visit his daughter. As a result of the search warrant, Ms. Reed was charged with possession of controlled substances and of drug paraphernalia, to which she pled guilty. The milk barn is down the road on her mother's property. It is not livable, as part of the walls are knocked down. She has never heard defendant say he would shoot his way out of a situation with law enforcement officers, nor has he ever done so. She has never seen him with guns since he moved out of her house.

At the time of the search in question, Ms. Reed stated that she had no felony convictions. She did have a .22 that belonged to her son, and she thinks there were two other .22's in the residence that belonged to him. He was there when the search occurred. She was not manufacturing drugs in her home, nor was defendant. Also, he did not have a key to her home in February of 2004. If he arrived and she wasn't home, he would have to wait for her to come home. He did not keep clothes there for himself. They were divorced at that time, and still are. He had no say over what happened in her home. There was no methamphetamine lab found during the search. She was not aware of defendant going to Oklahoma to get pills for methamphetamine manufacture. She has kept in touch with him, as they have one child together.

On cross examination, Ms. Reed admitted that there was marijuana, methamphetamine, and drug paraphernalia at her house when the search warrant was executed. She had been using drugs the night before the search warrant was executed, as had defendant. She thought that defendant was living in Springfield and Joplin at the time in question. In her house, there was a rifle next to the bed where they both had slept the night before. Defendant did not know the gun was there because it was so dark in the room. His boots, clothes, and other personal belongings were in the bedroom. She admitted that defendant was found in the attic stark naked, and that she lied to the federal agents

5

Case 6:04-cr-03024-BCW   Document 73   Filed 02/10/06   Page 5 of 9

when she told them that defendant was not there.

Defendant's counsel proffered the 911 report; proffered that Tommy Gaddis, County Commissioner for Wright County, would testify that Larry Shepherd's reputation is one of untruthfulness; and that a neighbor would testify that he did not believe defendant was living at the residence at the time in question.

Defendant has attacked Mr. Shepherd's credibility on the grounds that he has civil and criminal lawsuits pending. Therefore, it is alleged that he has a reputation for untruthfulness, which would impugn the validity of the information delineated to support the affidavit. Particularly, defendant asserts that the officer did not corroborate certain information to establish that the confidential informants were reliable. It is also contended that the information about weapons was not otherwise corroborated, nor was the suspicion that methamphetamine was depicted on the videotape ever confirmed.

Turning first to defendant's assertion that Larry Shepherd lied about the address on the affidavit, that document indicates that the address of 2380 County Road Stony Point Drive was verified through the 911 Office records and a deed from the County Recorder's Office. At the hearing, Mr. Shepherd testified that he called the assessor's office to obtain the address, which fact was verified by Mr. Stigall. While there was some confusion about the number of the residence on Stony Point Drive, i.e., 2380 versus 2200, the property and directions to it were fully described in the affidavit. There was nothing to suggest that the officer deliberately misstated the address. Additionally, while defendant attempts to cast doubt on the officer's understanding of where the search was intended to occur, the testimony elicited regarding another search at a nearby residence at a different time did not appear to have any relevance to the instant search. Further, there was no

6

indication whatsoever that the wrong property was searched. Given the full description of the property, the detailed directions to it, and the attached deed, it cannot be said that the fact that the wrong number house number on Stony Point Drive was included had any affect on the execution of the search warrant in this case.

Regarding the videotape, the testimony at the suppression hearing established that Officer Shepherd did not know when the videotape was made, and he admitted that defendant did not appear on it. Additionally, the Court has viewed the videotape in its entirety, and finds that it does not clearly depict a Ziploc bag of a white-powdery substance likely to be methamphetamine. Therefore, the Court is of the opinion that the officer's statement regarding the videotape should be disregarded in determining if probable cause existed to support the issuance of the search warrant.

Regarding Officer Shepherd's veracity, the Court agrees with defendant's contention that the charges pending against Officer Shepherd raise some questions regarding his credibility, which could have bearing on the motion to suppress. It should be noted, however, that there has been a prior proceeding in this case, in which defendant requested disclosure of the identity of informants and/or cooperating individuals. In that motion, defendant questioned Officer Shepherd's credibility due to the pending charges against him. This Court directed that the Assistant United States Attorney handling the case dispatch a federal agent to interview the confidential informants. An <u>in camera</u> hearing was then conducted with the designated agent, Don Higgerson, Resident Agent in Charge of the Bureau of Alcohol, Tobacco, Firearms & Explosives office in Springfield, Missouri. Agent Higgerson testified that he fully reviewed the statements in Officer Shepherd's affidavit with each of the four confidential informants, who verified that the information in the affidavit was accurate. This Court is satisfied, based on the previous <u>in camera</u> review, that the confidential

7

Case 6:04-cr-03024-BCW   Document 73   Filed 02/10/06   Page 7 of 9

informants verified the veracity of the information to a neutral third party, and that the information included in the affidavit that was provided by them was reliable. It should therefore be considered in the probable cause determination. This information included the following: a relative of defendant had told a confidential informant that defendant was cooking methamphetamine at his ex-wife's residence; a confidential informant told the officer that s/he had personal knowledge that defendant was getting pills to manufacture methamphetamine from Oklahoma and was supplying methamphetamine to a party in Mountain Grove to sell; this informant had been to the residence and seen methamphetamine there; another reliable informant told the officer that there was an old milk barn on the property, which had been converted into a bunkhouse and that approximately eight people were living there; that informant stated that defendant was still staying at the residence; a confidential informant stated that s/he had personal knowledge of defendant's illegal drug activities, that defendant was cooking methamphetamine at Gina Reed's residence, that he was getting pills from Oklahoma, that he used approximately six gallons of Anhydrous Ammonia a week, and that he stated that he would not go back to prison and that there were firearms inside the residence; and another reliable confidential informant, who knew that there was a warrant for defendant's arrest and knew that he was staying at Gina Reed's residence, told the officer that Gina Reed was allowing defendant to cook methamphetamine at her residence, either inside or in the garage, and that he had been selling methamphetamine for a long period of time, without getting caught.

It is clear that the information included in the affidavit in this case was derived from four confidential informants. The reliability of the information they provided was established by a neutral third party. It should also be noted that the information from the four sources was consistent, was based at least in part on first-hand knowledge, and was fairly detailed. Additionally, the officer

8

independently corroborated the information by confirming that defendant had an extensive criminal history.

Having fully reviewed the testimony adduced at the hearing, the affidavit, and with the prior ruling in this case regarding Officer Shepherd's credibility, the Court finds that there was sufficient information in the affidavit to provide probable cause for issuance of the search warrant. Defendant has failed to establish that the affidavit contained misstatements and/or omissions, or that the statements made were deliberately false or showed reckless disregard for the truth. Therefore, it will be recommended that the motion to suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence be denied.

    /s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date:   2/10/06